24-1296, National Association of Broadcasters Petitioner v. Federal Communications Commission and United States of America. Mr. Kinnaird for the petitioner, Mr. Craig Myle for the respondents. Mr. Kinnaird, good morning. Good morning. May it please the Court. The foreign sponsor rule imposes disclosure requirements on leased programming. The FCC violated its notice and comment obligations in two respects, by changing the lease definition and extending the rule to political advertising and paid PSAs. The key is for this Court to understand the original definition of a lease in the 2021 order, which appears at JA 14. Paragraph 28 defines a lease as, quote, any arrangement in which a licensee makes a discrete block of time, a broadcast time, available to be programmed by another in return for some form of compensation. And that definition does not encompass ordinary 30- or 60-second ad spots for two related reasons. First, ads are not programming. You can see this in footnote 82, which reciting a longstanding FCC regulation emphasizes this distinction. It says a lessor purchasing a discrete block of time, quote, supplies the programming to fill that spot and sells the commercial spot announcements in it. Footnote 85 and 91 are the same. So 60 minutes is a program. The bounty commercial appearing within it is not itself a program. And second, the advertiser does not contract for a discrete block of time. Rather, they will contract to have their ad aired some part of the day, for example, the evening drive time and radio or sometime during a program or rarely during a particular commercial break. But it's not like a lease with a lessor, as in the words of the Commission, paragraph 28, quote, controls and programs a discrete block of time, for example, Sunday 9 to 10 a.m. And that is why in paragraph 20... The ads aren't discrete. The ads aren't specific to time. I mean... No, they're not. You buy a Super Bowl ad, you're going to want it on the Super Bowl, not Sunday morning at 7 a.m. Well, my understanding is that in Super Bowl that they, it's not in the record, but that they actually contract for... No, but what you pay for the ad depends on when it's aired and the program to which it's attached. Right. That's a very small slice. Most of them just say during a part of the day or during the program. But even those are not actually contracting for a discrete block of time, you know, 7, 12 a.m. to 7, 12, 30. That's not what you do. That is what you do in the lease. And that's why when the Commission said in paragraph 28 that we're disclaiming that traditional short-form advertising constitutes a lease, it wasn't creating an exemption. It's just acknowledging the distinction. So an ad is not... I mean, what was the understanding of what traditional short-form advertising included? Because when I see that term, and I'm not a broadcaster, I think traditional short-form advertising means commercials. Like, that's the most natural meaning to me. But I'm wondering how the industry understood that term. Because I think how that is characterized is an essential question for determining whether what the FCC did was lawful. I think there's absolutely no question that the 30 to 60 second typical ad is a short-form advertising. But the question was, what's the boundary of that? Because it's not a term of usage. And the concern in the was, what about infomercials, which are longer and which do contract for a discrete block of time? And what happens if they do that, but they constitute entirely advertising? And that's what the Commission was seeking comment on in the second notice of proposed rulemaking. It said, you know, the affiliate said, drop the boundary altogether. All advertising, not subject to the rule. And they asked comment on that. Or alternatively, they asked to say what criteria the Commission might adopt to distinguish. Right. But to decide whether what they've done in the 2024 rule is just criteria, in part, I think turns on, you know, what the original term meant, or what was included within it. Well, it definitely included the 30 to 60 second ads that have now been swept in. There's really no debate about that. Again, it was only on the margin. And that's why they said, you know, give us the criteria to distinguish between leases and advertising spots so you don't subsume one in the other. And that's why the industry was blindsided by the 2024 order that effectively abandoned the lease definition and just said, hey, we're going to treat all advertising, even these 30 second spots, as leases. And then we're going to do an exemption regime based on the policy question of susceptibility to foreign manipulation. So is that just a formalistic distinction? Or does it? Is it a substantive distinction? Because one way to get at the exemptions is to say, here's a category, you know, we have leases, leases are defined not to include traditional short form advertising. And now lease is a broader category, but there are exemptions. So is that just a formalistic distinction? Or is it a substantive? Does it matter substantively? Well, it matters substantively. But if you're going to draw that distinction, you have to give notice. It matters substantively because these ads just don't fit the definition of lease for the two reasons I gave you. So to create an exemption scheme is brand new. And particularly, the second part of the notice and comment violation is they gave us no inkling about these laws that they were going to draw between political advertising candidate and non-candidate advertising. You have to understand that issue advertising, in particular for local TV stations, is just their lifeblood. So they rely on that infusion of cash in election years. So the industry would have been on the ramparts if this was open in the comments. And it wasn't because that wasn't the definition of the reason. Not a single broadcaster would ever consider a 30-second ad spot to be either a lease or a program. And as I mentioned, in the 2021 order, neither did the commission. So I think that they have violated the notice and comment rules. Let me ask you about that because you said you were blindsided. And the joint appendix is full of letters from the NAB. And I want to ask you if this is standard operating procedure. For instance, the one on JA-256 says to the FCC, we're hearing whispers that the original draft order applied the foreign sponsorship identification rules to all advertising except commercial ads for goods and services. But that subsequent changes oddly exempt candidate sponsored advertisements as well as ads for goods and services. And then there's a footnote that says, according to reports, some of these substantive changes have been added following the draft order that already has three votes registered in favor of approving it. How do you know? How does NAB know all this? Well, there is the ability. For you to say you were blindsided, if anything, you're having all these ex parte communications with the FCC. Is that standard operating procedure? Yes, it is. But I would point out that the notice and comment obligation is federal registry notice. So that has to be in there so that we can address it in our comments. I'm well aware of that. You were not blindsided. The NAB was not. Well, they were at the time. You had inside information. Yes, Your Honor, but nobody else did. You're not representing anybody else. I'm sorry? You're not representing anybody else. I'm done. Go on with your argument. Okay, thank you. But I would just point out, at least with the other judges, that there has to be notice in the federal register for the entire public to comment on it. And just the fact that we found out by the rumor mill doesn't represent the notice. Can I ask about the notice? Why is this the wrong way of thinking about this? Which is the 2021 rule draws a line based on duration. And they say short, if it's short, not covered, strong, negative implication, if it's long, it's covered. And then the concern is that line is vague, hard to administer, maybe it sweeps in all ads. So not a good criterion of distinction. And then the commission responding to that puts out a notice and says, we want to explore what is the right line between what's covered and what's not. And we're going to explore a duration-based line, and we're going to explore a content-based line. And we're going to explore a line based on they scuttle the duration approach, and they replace it with the content approach. But all of that just seems to put on the table when the notice says, should we do duration? Should we do content? Should we do contract? What is the boundary? Respectfully, your honor, I don't think that is because it never changed the definition. So even if you didn't have this express recognition of traditional short-form advertising, these spots just don't meet the lease definition. So that was never there. But all that they asked for was, is this, is duration? This is all in the notice that's all about interpreting what the lease term does or doesn't cover. It's really about the boundary. But the boundary doesn't make, the fact that there's a boundary, what would something was more than two minutes, or if it's an infomercial where there's a lease of the contract time, that's a very different question for saying things that are not programming, are not leases for contracts for discrete block of time. Those are not in at all. So you have to change your definition and tell us you're changing the definition before you do that. Because the only question was really, do you drop the traditional short-form boundary? The definition of what? The definition of a lease as an arrangement for making a discrete block of time, 9 a.m. to 10 a.m., available for programming. I would also point out that the court... I take your point. If you think of this as, there's a threshold distinction between lease and other stuff, and this only covers leases, I can see you're... I can see focusing on that threshold definition of lease point, but they're using they're using lease. Lease is just the shorthand form for things that are covered by sub-J. Well, it has a specific definition. I would also point out... Wait, what's the... I mean, where's that? That's in paragraph 28, and they never changed that. That doesn't have the force and effect of law, though. Well, it does if you... I mean, the court said environmental integrity. If you change the interpretation and broaden it, that's enough. But I would also point out that the political advertising is not the kind of content they refer to in paragraph 32 of the notice. That was only content to distinguish a lease from an advertising. And all the distinctions they later drew, at a minimum, they need notice of that. But I would also say the order lacks a rational basis. It's irrational because there's no evidence of foreign involvement. So, just one more question before you get to your substance, which you sort of alluded to, which is, why is it all of the rules that we're focused on in the 21 order and all of the rules that we're focused on in the 24 order, none of them have the force and effect of law. This is all, you know, they cite something called an order. This is just all preamble stuff. This is the agency changing its interpretation of a regulation. And Perez says no notice and comment when they do that. It's just an interpretive rule. Might or might not be valid under Kaiser, but it's not a notice of comment issue. Well, environmental integrity did say if you change the interpretation, you do have to give notice. But I would also point out that on the lacking rational basis, there's no evidence of foreign involvement in these forms of broadcast. That was enough to exclude it in 2021, inexplicably not in 2024. And just, I have to emphasize the sheer senselessness of this regulation to apply universal corroboration requirements when virtually no lessees are foreign governmental entities. And there's no possibility of catching a surreptitious sponsor. So if you corroborate, you're not registered. That, by definition, doesn't capture a foreign sponsor. And you have no reason, if you're surreptitious, to make the certification because it's toothless. The SDC has said you have no obligation to do it. There are no consequences. It does infect the airing of your program. So there's no possible benefit, and yet you put hundreds of thousands of transactions through meaningless paces. So for these reasons, I think I'm seeing out of time. Did this sort of corroborational permit go through the Paperwork Production Act at OMB? Yeah, it did. They put it through. And in the original order, they said only 5,000 leases would be out there, which was an underestimate even for conventional leases. But certainly, there's many hundreds of thousands of transactions for political issue advertising and paid PSAs. So it wasn't found to be overly burdensome in that process? That's correct. I see I'm out of time. We'll give you a couple minutes to reply. Mr. Cragmire? Thank you, Your Honor. And may it please the Court, Bradley Cragmire for the respondents. I think Judge Katsas is thinking about the notice issue exactly the right way. And just to quote from my notes, the 2022 notice put the public on notice that the Commission was evaluating the line between what's covered and what's not. And as Judge Katsas mentioned, the 2022 notice is best read as using the word lease as a short form for what's covered by Subsection J. I mean, that's true. But there are other parts of it that are problematic for you. For instance, the statement, it's all about policing lines. But you take as a given that what the concept of advertising is not supposed to subsume lease or vice versa, right? So whatever lines you draw, ads can't collapse entirely into leases. Yes, Your Honor. And I think that only bolsters our point that the public was on notice of how exactly the Commission was thinking about drawing these lines. And I think what the Commission was really evaluating is what's vulnerable and should be covered by Subsection J and what's not vulnerable to undisclosed foreign sponsorship and should not be covered by Subsection J. And I think some compelling evidence that that's how the petitioner understood it was they have 10 pages of their comments in response to the notice that argued to the Commission why certain material should not be covered under the definition of lease. They asked for local programming to be carved out. They asked for religious programming to be carved out. I think that shows that they knew that the lines... No, go ahead. Sorry. I think that shows they knew what the Commission, the exercise the Commission was walking through is deciding what should be subject to the rule and what should not be subject to the rule. Right. But this is all in the context of interpreting the word lease, which is the codified term in Subject. I understand if it's just a question of what should be covered and what should not be covered, I understand ads versus political candidate ads versus public service. It makes some sense to me. But I'm not sure why those lines help you define what's a lease. I think those lines help us define what's a lease because as your Honor mentioned earlier, lease is a shorthand for what's covered by Subsection J and what's not a lease is what's covered by an exception. And so that's the line drawing exercise the Commission was walking through here. And I guess at the end of the day, I think as Judge Henderson pointed out, there's compelling evidence again in the record that they were not blindsided. So as we mentioned in our brief, I think even if there were a notice problem, that would be harmless error because the proposal the Commission ultimately adopted, borrowed terminology from the comments and expressly considered the petitioner's proposal to carve out issue ads and paid PSAs. It walked through the reasons why it ultimately decided not to do that. And then I guess just one other point on harmless error, the idea that there would have been an avalanche of comments had the Commission been a little clearer in its notice is a little hard to square with the lack of comments after the 2020 NPRM, which is the NPRM that kicked this off. And under that proposed rule, the foreign sponsorship ID rule would have applied to all broadcast matter. And there was no exception for advertising. So if you were going to see an avalanche of advertiser concerns, I think we would have seen, would have expected to see those. And in response to the 2020 NPRM, we don't. I'm happy to also address the petitioner's point that, you know, there's no evidence of undisclosed foreign sponsorship ID in these particular types of programming, this particular types of content. And I think the Commission, you know, explained why that really misses the forest through the trees. And I think that, as I mentioned earlier, the exercise the Commission was evaluating, the problem the Commission was evaluating is what content is vulnerable to undisclosed sponsorship and what content is not. It then peeled off the content that either makes clear who the sponsor is, and that's the exception for commercial advertising for goods and service, or it peeled off the... Can you speak to that point more specifically to the question about the distinction between the kinds of issue advertising, whether political or, you know, political issue ads versus candidate ads? Sure, Your Honor. I think issue ads, as it's defined in the rule, and it borrows from the statutory language, which is essentially political matter or matter of public matter relating to a controversial issue of public concern. So that would, I think, cover ads that... I'm sorry, I guess I should be more clear. I guess my question is, why are political issue ads not more like candidate ads? Because they're similarly regulated under the FEC, and for some of the reasons that political ads are excluded, why wouldn't political issue ads be excluded? So the Commission carved out candidate ads for two reasons. One was foreign nationals cannot donate to candidates, so the chance that there would be a disclosure of a foreign-sponsored candidate ad are very low because foreign nationals cannot donate to the candidates. And then certain candidate political ads have an additional layer of transparency under Section 315 of the Communications Act to stand by your ad, and we don't see... We don't have those safeguards for issue ads. Now, to be sure, foreign nationals cannot sponsor certain types of political ads, but issue ads covers political ads and non-political ads, and trying to draw the lines in a way that distinguish between those two would create additional burden for the regulated industry and also create loopholes that bad actors could exploit. I guess that doesn't answer my question of why political issue ads are not more like candidate ads rather than like general issue ads. They're not more like candidate political ads because we don't have a ban on foreign national sponsorship the way that we do for candidate ads, so it's missing that piece of it, and it's also missing the additional transparency that we get from Section 315. I'll make just a couple of quick points on burden. The Commission took several steps to reduce the burden here, and we're dealing with a certification form that's only a half page, which the Commission slims down a lot from the half-page checkbox form that the Commission slimmed down from when it proposed. It allows entities to use its own certification language if it already has language. If they don't want to use that option, they can use the screenshot option. It reduced the burden for recurring leases. If there are short-form leases between the same sponsor and broadcaster for the same content, they only have to discharge these duties once a year. So I think the Commission really did what it could to reduce the burden while also drawing the lines in a way that focused on the material that it thinks is most vulnerable to undisclosed foreign sponsorship. Happy to address any other questions the Court has, if not... I can ask you the same question I asked your friend about my befuddlement over the framing here. All of the rules that we're talking about are just in preambles. None of them seems to have the force and effect of law. You could have put the short-form traditional ad not covered rule into the CFR. You didn't. You could have put the new rules of ads if covered by F not covered by J rule. It's all in a preamble, which leads me to think, I don't know, this is all just interpretive rules addressing what the that helps you on notice and comment, because I think this case is a lot like a lot like, you know, paralyzed veterans is no longer a good law, but it hurts you. It's just hard to imagine all these very specific granular rules as just flowing from an interpretation of the word lease, and I don't know what to make of it. Can I just accept the party's framing that you're a bunch of legislative rules even though none of them is in the CFR? A couple of responses to that, Your Honor. The exception for political ads, I believe, it would be codified in the amended version of the rule, so I guess that's one point. The other is, I mean, I think this does, as you alluded to, go to notice, so any concerns that we would have about notice, you know, to the extent that Your Honor thinks this is an interpretive rule, I think that sort of drives down any potential concerns about notice. Then I guess lastly, I don't see any reason why the court couldn't accept this framing, and if there were a later argument that popped up in the context of an enforcement proceeding, like perhaps that would be another venue to air these arguments, but as the case is presented here as facial attack before any enforcement proceedings, I don't see a reason why the court couldn't go ahead and accept the framing as the parties have teed it up. Does the commission view the rules as having the force and effect of law? I believe so, yes, Your Honor. And with the commission, I assume you would not apply them retroactively to ads undertaken before the rule was announced? That's correct, Your Honor. One of the measures the commission took to reduce the burden was to grandfather and existing leases, so this will only apply to new leases after the rules go into effect or leases that are re-opt after the effective date. Since we haven't had any letters about this, I assume the FCC is not currently reconsidering this rule? That is correct, Your Honor. There is a pending Paperwork Reduction Act request with OMB right now, so that's the state of play. If and when OMB ultimately approves it, there would be a notice that the new rule had gone into effect. Thank you. We'd ask the court to deny the condition. Thanks. Your Honor, briefly, five points. First, environmental integrity does say, at least within a substantive rule, if you find it not to be binding, then I think the court needs to declare that, and then we would proceed under the definition of leases in any enforcement proceeding. On the blindsiding point, I would just point out that the rumors of these were of draft orders that could issue at any time, so we were prejudiced because we didn't have time to compile all the evidence. Political advertising distinctions came in on a second draft order that we heard about, so there is a prejudice point there. The point on religious programming, those are conventional leases, not advertising. On the lack of comments on the 2020 NPRM, that was such an incredibly broad ruling. It basically made any footage that you show, you have to disclose whether or not it came from a foreign entity, so advertising, even though there was an objection to it, was a very secondary concern at that time. With regard to Section 315, that's a very small slice of federal candidates when they seek a particular lowest unit rate. Only happens in a small run-up to the election. It doesn't justify these categorical lines. Finally, I would just point out, they are really saying that there was always this broad definition of lease unless it was exempted. That's just erasing the actual definition from the 2021 order, which was not put up for reconsideration. I see I'm out of time, unless the court has further questions. All right, thank you.
judges: Henderson; Katsas; Rao